**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

JOHN CALDWELL
ADC #90188                                                                                                    PLAINTIFF

V.                                          5:09CV00129  JMM/JTR

CORRECTIONAL MEDICAL SERVICES, INC.                                           DEFENDANT


**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Judge James M. Moody.  Any party may serve and file written objections to this recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Clerk no later than fourteen (14) days from the date of the findings and recommendations.  The copy will be furnished to the opposing party.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the United States District Judge, you must, at the same time that you file your written objections, include a "Statement of Necessity" that sets forth the following:

1.       Why the record made before the Magistrate Judge is inadequate.

2.       Why the evidence to be proffered at the requested hearing before the
         United States District Judge was not offered at the hearing before the

       Magistrate Judge.

3.     An offer of proof setting forth the details of any testimony or other evidence (including copies of any documents) desired to be introduced at the requested hearing before the United States District Judge.

From this submission, the United States District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

       Clerk, United States District Court
       Eastern District of Arkansas
       600 West Capitol Avenue, Suite A149
       Little Rock, AR 72201-3325

## I. Introduction

Plaintiff, John Caldwell, who is a prisoner in the Varner Super Max Unit ("VSM") of the Arkansas Department of Correction ("ADC"), has commenced this *pro se* § 1983 action alleging that Correctional Medical Services, Inc. ("CMS") is failing to provide him with adequate medical care for bilateral hernias, high blood pressure, and rectal bleeding.[1] *See* docket entries #1 and #5.

CMS has filed a Motion for Summary Judgment, a Brief in Support, a Statement of Undisputed Facts, and an Amended Affidavit. *See* docket entries #99, #101, #102, and #104. Plaintiff has filed a Response, a Brief in Support, and a Statement of Disputed Facts. *See* docket entries #112, #113, and #114.

Before addressing the merits of the Motion, the Court will briefly summarize the relevant,

---

[1] CMS is a private corporation that has contractually agreed to provide medical services for ADC prisoners. *See* docket entry #102.

undisputed facts regarding each of Plaintiff's medical conditions.[2]

**A.      Bilateral Hernias**

1.      In 1978 and 1986, Plaintiff had at least two surgeries to repair bilateral inguinal hernias.  *See* docket entries #102, #113, and #114.  At that time, Plaintiff was a freeworld citizen, and the surgeries were performed at a Veterans Administration Hospital. *Id.*

2.      In 1993, Plaintiff began his incarceration in the ADC.[3]  *See* ADC website, www.adc.arkansas.gov.

3.      In 2007, Plaintiff was transferred to the VSM.  *See* docket entries #102, #113, and #114.

4.      In May of 2007, Plaintiff began to complain about the recurrence of his inguinal hernias. *Id.*  Thereafter, Plaintiff was examined *at least* nine times by several CMS nurses, two general practitioners, and three surgeons.  *Id.*  These CMS medical providers agreed that Plaintiff's hernias were easily reducible; did not require surgery; and could be treated with the use of a hernia belt. *Id.*

5.      On December 29, 2009, a CT scan was taken of Plaintiff's abdomen and pelvis.  *See* docket entry #102, Ex. B. at 45.  The results indicated that Plaintiff had a "right inguinal hernia, which contained fat only," and "no significant hernia" on the left side. *Id.*  Importantly, "[n]o other significant abnormalities" were "seen in the abdomen or pelvis." *Id.*

---

[2] In his Amended Complaint, Plaintiff alleged that he also suffered from "impaired vision," "extreme eye pressure," and that his "right arm intermittently turns purple." *See* docket entry #5 at ¶¶ 15 at 30.  However, in his summary judgment papers, Plaintiff clarifies that he is *not* seeking relief, in this lawsuit, for his right arm pain or eye problems. *See* docket entry #113 at 26.  Thus, the Court will not address those ailments.

[3] It is unclear to which ADC Unit Plaintiff was originally assigned.

6.      On February 24, 2010, Plaintiff's right inguinal hernia was surgically repaired at the outpatient facility of a private hospital in Little Rock, Arkansas. *Id.* at 87-88.  He was returned to the VSM later that day. *Id.*

7.      Dr. Anderson, who is the Regional Medical Director for CMS, has submitted a sworn Declaration explaining that Plaintiff's "hernia issue has been resolved in accordance with the recommendations of the surgeon." *See* docket entry #104, Ex. A at 4.  Additionally, Dr. Anderson concludes that, based upon his medical training and professional judgment, the care Plaintiff received for his hernias was "appropriate and adequate medical care" that was "consistent with sound medical practices." *Id.*

**B.   High Blood Pressure**

1.      On November 15, 2007, a CMS physician instructed Plaintiff to take Metoprolo and Hydrochlorothiazide to treat his high blood pressure.[4]  *See* docket entry #102, Ex. B. at 25. Thereafter, CMS medical providers routinely monitored Plaintiff's blood pressure.  *Id.*

2.      On December 28, 2007, Plaintiff's blood pressure was 148/93, which was "slightly higher" than a high-normal reading of 140/90.  *Id.* at 26 and 88; *see also* Ex. A at 6.  At that time, the physician changed Plaintiff's blood pressure medication to Enalapril.  *Id.*

3.      Thereafter, CMS medical providers routinely monitored Plaintiff's blood pressure, which was within the normal limits except for on January 23, 2009, when it was slightly elevated at 146/88.  *Id.* at 87-100.

4.      Plaintiff alleges that medical providers periodically failed, over the course of a few weeks, to dispense his prescribed blood pressure medications.  *See* docket entries #5 and #113.

---

[4] It is unclear when Plaintiff was first diagnosed with high blood pressure.

However, in his deposition, Plaintiff *conceded* that the failure to receive those medications did not have "any impact" on him. *See* docket entry #102, Ex. C at 2.

5.  Similarly, Dr. Anderson states, in his Declaration, that Plaintiff did not suffer any long term damage as a result of periodically missing his blood pressure medications over the course of few weeks. See docket entry #104, Ex. A at 6. Dr. Anderson also concludes that the treatment Plaintiff received for his high blood pressure was "appropriate and satisfactory for his complaints" and "consistent with sound medical practices." *Id.*

**C.   Rectal Bleeding**

1.  On August 9, 2007, Plaintiff reported to a CMS nurse that he had a history of bloody stools. *See* docket entry #102, Ex. B at 3. As treatment, the nurse instructed Plaintiff to take Metafiber once a day. *Id.* Thereafter, Plaintiff did not file any sick call requests seeking further or different treatment for his rectal bleeding. *Id.*

2.  On December 18, 2009, Plaintiff told a CMS physician that he was experiencing bloody stools. *Id.* at 17. The physician noted that a colonoscopy and barium enema, which were performed in 2003, showed no signs of cancer, and instead, indicated that Plaintiff suffered from hemorrhoids and possible angiodysplasia.[5] *Id.* The physician renewed Plaintiff's prescription for Metafiber and instructed him to drink more liquids. *Id.*

3.  Plaintiff contends that CMS healthcare workers periodically failed to dispense his Metafiber prescription. *See* docket entry #113.

4.  In his sworn Declaration, Dr. Anderson explains that Plaintiff could have purchased

---

[5] In his Declaration, Dr. Anderson explains that a angiodysplasia is a "vasculature because of inflammation due to age and hemorrhoids." *See* docket entry #104, Ex. A at 5.

other fiber supplements at the prison commissary. *See* docket entry #104, Ex. A at 5. Additionally, Dr. Anderson states that fiber supplements are a "comfort item," and that periodic failure to receive such a medication would be a "nuisance" of "no clinical significance." *Id.* Dr. Anderson also concludes that "the medical care and treatment provided to [Plaintiff] for his history of rectal bleeding was appropriate and satisfactory" and "consistent with sound medical practices." *Id.*

## II. Discussion

In his Complaint and Amended Complaint, Plaintiff alleges that, since he arrived at the VSM in May of 2007, he received constitutionally inadequate medical care for his bilateral inguinal hernia, high blood pressure, and rectal bleeding. *See* docket entries #1 and #5. Although he was given the opportunity to do so, Plaintiff has *not* named as Defendants any of the individual healthcare providers who treated those conditions.[6] *Id.* Instead, he alleges that Defendant CMS is responsible for the allegedly inadequate medical care because it had an unofficial practice or custom of: (1) refusing to consult freeworld specialists; (2) failing to order appropriate diagnostic tests; (3) delaying corrective surgery; and (4) running out of prescription medications. *Id.*; *see also* docket entry #113.

### A.   Exhaustion of Administrative Remedies

Defendant CMS argues that Plaintiff's allegations regarding his treatment for rectal bleeding should be dismissed, without prejudice, because he has failed to exhaust his administrative remedies in regard to that medical problem. *See* docket entry #101.

---

[6] On May 19, 2009, the Court entered an Order giving Plaintiff an opportunity to amend his Complaint to "name as Defendants any of the individual healthcare providers who failed to provide him with adequate medical care." *See* docket entry #2 at 3. On June 15, 2009, Plaintiff filed his Amended Complaint, which specifically states that Plaintiff does not wish to name any individual healthcare providers as Defendants. *See* docket entry #5 at 6-7.

The Prison Litigation Reform Act provides, in pertinent part, that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock,* 549 U.S. 199, 219 (2007);[7] *see also Woodford v. Ngo*, 548 U.S. 81-89-91 (2006).

Importantly, the PLRA requires inmates to: (1) fully and properly exhaust their administrative remedies as to each *claim* mentioned in the complaint; and (2) complete the exhaustion process prior to filing an action in federal court. *See Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003); *Graves v. Norris*, 218 F.3d 884, 885 (8th Cir. 2000) (emphasis added). To fully and properly exhaust administrative remedies about a medical problem, an ADC prisoner must: (1) file an informal resolution with the medical staff; (2) file a grievance to the Health Services Administrator if the attempt at informal resolution is unsatisfactory; and (3) appeal the Health Services Administrator's decision to the ADC Deputy Director for Health and Correctional Programs. *See* docket entry #98, Exs. B, C, and E (ADC Adm. Dir. 07-03 § IV(E) through (G) (August 6, 2007)).

In a sworn Declaration, the ADC Medical Grievance Investigator states that Plaintiff fully exhausted ten medical grievances since he arrived at the VSM, in May of 2007. *See* docket entry

---

[7] In *Jones v. Bock*, 549 U.S. 199, 211 (2007), the Court emphasized that: "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."

#98, Ex. C. Defendant CMS argues that Plaintiff has not properly exhausted his administrative remedies because he did not specifically mention "rectal bleeding" in any of those ten fully exhausted grievances. *See* docket entry #101 at 15.

Defendant's argument misconstrues that nature of Plaintiff's claim regarding his treatment for rectal bleeding. Specifically, Plaintiff contends that CMS medical providers improperly treat his rectal bleeding by periodically failing to give him Metafiber.

Importantly, the parties *agree* that Plaintiff filed several, *properly and fully exhausted* grievances about his failure to properly receive Metafiber. *See* docket entry #98, Ex. C (VSM 08-623; VSM 08-802; VSM 08-1010; VSM 08-1137; VSM 08-1514; VSM09-00184). Thus, the Court concludes that Plaintiff properly and fully exhausted his administrative remedies.

**B.      Judgment as a Matter of Law**

Defendant CMS argues that it is entitled to judgment, as matter of law, because Plaintiff has failed to come forward with any evidence demonstrating that his allegedly inadequate medical care was the result of a CMS practice or custom.[8] *See* docket entry #101. This argument is well taken.

In a § 1983 action, a prisoner cannot hold a corporation vicariously liable for the wrongful actions of its employees. *See Burke v. North Dakota Dept. of Corrs. & Rehab.*, 294 F.3d 1043, 1044

---

[8] It is well settled that summary judgment should only be granted when the record, viewed in a light most favorable to the nonmoving party, shows that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of informing the court of its basis for the motion and identifying the parts of the record that show lack of a genuine issue. *Celotex,* 477 U.S. at 323. To defeat a motion for summary judgment, the nonmoving party must go beyond the pleadings and establish "by affidavits, or by the depositions, answers to interrogatories, and admissions on file," that specific facts show a genuine issue for trial exists. *See* Fed R. Civ. P. 56(c); *Celotex,* 477 U.S. at 324.

(8th Cir. 2002). Rather, under § 1983, a corporation, acting under color of state law, can be held liable only for its unconstitutional policies, practices, or customs. *Id.* Thus, Defendant CMS can be held liable only if "there was a policy, custom, or official action that inflicted an actionable injury" on Plaintiff. *Johnson v. Hamilton,* 452 F.3d 967, 973 (8th Cir. 2006); *see also Sanders v. Sears Roebuck & Co.*, 984 F.2d 972, 975-976 (8th Cir. 1993).

Plaintiff does *not* contend that his allegedly inadequate medical was the result of an official CMS policy. Instead, he contends that his allegedly inadequate care was the result of CMS's unofficial practice or custom of: (1) refusing to consult freeworld specialists; (2) failing to order appropriate diagnostic tests; (3) delaying corrective surgery; and (4) running out of prescription medications. *See* docket entry #113.

However, Plaintiff has failed to come forward with *any* evidence establishing that Defendant CMS has any such policies or customs at the VMS in 2007, 2008, and 2009. Instead, he has produced a November 25, 2003 letter, in which the United States Attorney General's Office concludes that prisoners at the McPherson Unit and the Grimes Unit, in Arkansas, were not receiving constitutionally adequate medical care.[9] *See* docket entry #113, Ex. E. Similarly, Plaintiff has produced a December 29, 2006 letter, in which the United States Attorney General's Office concludes that prisoners, in Delaware, were not receiving constitutionally adequate medical care.[10] *Id.*, Ex. F.

---

[9] The Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997a, gives the United States Attorney General the authority to investigate state prisons and bring civil lawsuits to enforce the constitutional rights of state inmates. The November 25, 2003 letter is addressed to Arkansas Governor Mike Huckabee. *Id.*

[10] The December 29, 2006 letter is addressed to Delaware Governor Ruth Ann Minner. *Id.*

CMS's medical practices and customs *in Delaware* are utterly irrelevant to this lawsuit. Similarly, the November 25, 2003 letter regarding Arkansas prisons is irrelevant because it: (1) specifically states that it is limited to the medical care at the *McPherson and Grimes Units*; and (2) was written *four years* before Plaintiff began receiving medical treatment, in 2007, for his rectal bleeding, hernias, and high blood pressure. Thus, that letter in no way addresses the relevant inquiry in this case, which is Defendant CMS's medical practices and customs at the VSM in 2007, 2008, and 2009. Accordingly, the Court concludes that Plaintiff has failed to come forward with any evidence demonstrating that the allegedly inadequate medical care he received at the VSM in 2007, 2008, and 2009, was the result of a CMS practice or custom. *See Johnson,* 452 F.3d at 973 (affirming summary judgment where a prisoner failed to produce evidence suggesting that his allegedly inadequate medical care was the result of a CMS policy, practice, or custom).

Additionally, Plaintiff has failed to demonstrate that the care he received was constitutionally inadequate. To the contrary, the *unrefutted* medical evidence demonstrates that CMS medical providers, *who have not been named as Defendants in this action*, routinely examined Plaintiff and treated his hernias, high blood pressure, and rectal bleeding with medications and a hernia belt. Additionally, it is *undisputed* that they provided Plaintiff with corrective surgery for his hernias when it was deemed necessary by a surgeon and diagnostic testing. *See Langford v. Norris*; 614 F.3d 445, 460 (8th Cir. 2010) (explaining that negligence, gross negligence, and a disagreement with a course of medical care does not rise to the level of a constitutional violation); *Logan v. Clarke*, 119 F.3d 647, 649-50 (8th Cir. 1997) (finding no constitutional violation when prison doctors treated an inmate on "numerous occasions" and "made efforts to cure the problem in a reasonable and sensible manner"); *Kayser v. Caspari,* 16 F.3d 280, 281 (8th Cir. 1994) (finding no

constitutional violation when the defendants did not "ignore [the prisoner's] allegations of pain" and provided him with "an escalating level of treatment for [his] aliments over time").

Additionally, Dr. Anderson concluded, in his *unrefutted* Declaration, that the care Plaintiff received for his hernias, high blood pressure, and rectal bleeding was appropriate for his complaints, and consistent with sound medical practices. *See Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997) (holding that: "In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment").

Finally, although he has been given the opportunity to do so, Plaintiff has failed to come forward with any verifying medical evidence demonstrating that he was harmed by the physicians' decision to delay corrective surgery until February 2010, or by any periodic delay in receiving his medications. *See Gibson v. Weber*, 433 F.3d 642, 646-47 (8th Cir. 2006) (explaining that, to avoid summary judgment, an inmate must place verifying medical evidence in the record to establish the detrimental effect of the alleged delay in medical treatment). To the contrary, Dr. Anderson states in his *unrefutted* Declaration, that Plaintiff was not harmed by the periodic failure to receive Metafiber or his high blood pressure medications.

### III. Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1.    Defendant CMS's Motion for Summary Judgment and Amended Motion for Summary Judgment (docket entry #99) be GRANTED, and this case be DISMISSED, WITH PREJUDICE.

2.    The Court CERTIFY, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma*

*pauperis* appeal from any Order and Judgment adopting this Recommended Disposition would not be taken in good faith.

Dated this 12th day of November, 2010.

_____
UNITED STATES MAGISTRATE JUDGE